```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ANA LYDIA VEGA-SANTANA, et al.,           :

                                          :       OPINION & ORDER
                  Plaintiffs,
                                          :       11 Civ. 2071 (GWG)
       -v.-
                                          :

NATIONAL RAILROAD PASSENGER
CORPORATION et al.,                       :

                  Defendants.             :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiffs Ana Lydia Vega-Santana ("Vega") and Robert Villanua bring this suit for negligence against the National Railroad Passenger Corporation ("Amtrak") and several unidentified entities for injuries Vega sustained in New York's Pennsylvania Station following a trip on an Amtrak train. Defendants now move for summary judgment on all of plaintiffs' claims pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, this motion is granted.

I.    BACKGROUND

      The following facts are undisputed unless otherwise stated.

      Vega is a writer who lives in Puerto Rico with her husband, Villanua. See Deposition of Ana Lydia Vega, dated Aug. 16, 2012 (annexed as Ex. 1 to Declaration of Jennifer A. Ramme, filed Jan. 25, 2013 (Docket # 42) ("Ramme Decl.")) ("Vega Dep. Tr."), 5; Deposition of Roberto Villanua, dated Aug. 17, 2012 (annexed as Ex. 2 to Ramme Decl.) ("Villanua Dep. Tr."), 4, 8. Vega was invited to give the W.E.B. Du Bois lecture at Colgate University in Hamilton, New York, and traveled there in October 2008. (Vega Dep. Tr. 13; Villanua Dep. Tr. 6–7).

1

Following the lecture, on October 15, 2008, Vega and Villanua traveled from Hamilton to Utica, New York, and then took an Amtrak train from Utica to New York City. (Vega Dep. Tr. 44–45; Villanua Dep. Tr. 7). Plaintiffs' train arrived at Pennsylvania Station in New York City at approximately 3:30 pm. (Vega Dep. Tr. 53–55; Villanua Dep. Tr. 7–8). Vega was carrying one shoulder bag, approximately 1.5 feet by 1.5 feet, and wheeling a medium-sized rolling suitcase. (Vega Dep. Tr. 48–53; Villanua Dep. Tr. 10–11). After exiting the train, the couple looked for signs for an elevator or street exit. (Vega Dep. Tr. 56; Villanua Dep. Tr. 14–15). Because they did not see any signs for either, Vega approached a man on the side of the platform. (Vega Dep. Tr. 56; Villanua Dep. Tr. 15–16). She asked if he worked there, and when he answered in the affirmative, she asked how to exit to the street. (Vega Dep. Tr. 56–57; Villanua Dep. Tr. 19). He responded that the best option was to take the escalator. (Vega Dep. Tr. 8, 57; Villanua Dep. Tr. 19). He then told Vega and Villanua to follow him, and proceeded to move "so fast that [Vega] almost lost sight of him and [she] accelerated [her] step." (Vega Dep. Tr. 8; Villanua Dep. Tr. 20, 23). When Vega got to the escalator, she noticed that it was "narrow." (Vega Dep. Tr. 64; Villanua Dep. Tr. 28). She saw the individual whom she had followed at the top of the escalator, so she got on the escalator. (Vega Dep. Tr. 65). As she stepped on, she "immediately [] tried to place the suitcase . . . next to [her], but [she] noticed that there wasn't sufficient space, so . . . [she] placed it on the step behind [her]." (Id.). When she was approximately "halfway" up the escalator, she "fell backwards . . . [a]nd upon falling backwards, [her] body turned" and she injured her wrist. (Vega Dep. Tr. 69–71, 72–73; Villanua Dep. Tr. 39–41). In response to a question about what caused her fall, Vega stated,

> I truly cannot explain it myself. I imagine that I lost my balance. But at the moment that something like that happens, emotions take over and the rational[] part is not working clearly, therefore I cannot give you a precise reason. . . .

2

Something took me off balance, but I cannot categorically affirm what it was. (Vega Dep. Tr. 69–70).

When asked if the escalator was working properly at the time that she fell, she responded, "I cannot swear by it because I don't know if there was a problem, but my impression was that yes, that it was working." (Vega Dep. Tr. 70). Villanua testified that he believed the escalator was in working order. (Villanua Dep. Tr. 30).

After Vega's fall, the escalator stopped, and her husband helped her up. (Vega Dep. Tr. 84–86; Villanua Dep. Tr. 44, 46–50). She was then assisted by police and paramedics in the station and taken to the hospital. (Vega Dep. Tr. 93–94, 99–101; Villanua Dep. Tr. 67–70, 78–81). After an examination at St. Vincent's Hospital (Vega Dep. Tr. 101–03; Villanua Dep. Tr. 81–82), doctors diagnosed her with a fracture of the distal radius bone (Vega Dep. Tr. 102). She spent the remainder of her time in New York City in a hotel room with her arm immobilized, and was forced to cancel several meetings and interviews. (Vega Dep. Tr. 106–10; Villanua Dep. Tr. 84–85). Upon her return to Puerto Rico, Vega consulted an orthopedic specialist, who treated her, replaced her cast, and recommended physical therapy. (Vega Dep. Tr. 112–23). She underwent several months of physical therapy (Vega Dep. Tr. 123–26), but stopped when she was told that further therapy would not be effective (Vega Dep. Tr. 126). She struggled with basic activities such as pulling up zippers, buckling seat belts, cooking, and cleaning for several years following the accident. (Vega Dep. Tr. 126–28; Villanua Dep. Tr. 90–92). Because of this injury, Vega's ability to write was "quite impaired," her "writing rhythm and . . . literary production, productivity, has been affected," and her career has been negatively impacted. (Vega Dep. Tr. 9–10, 22–24, 29–43, 137–39; Villanua Dep. Tr. 98–102). Doctors told her that consequences of the fracture could include degenerative arthritis and carpel

tunnel syndrome, but she has not yet experienced those conditions. (Vega Dep. Tr. 121, 132–33).

Plaintiffs filed this lawsuit in Puerto Rico, where they reside. See Complaint, filed October 14, 2010 (Docket # 1). The parties then agreed to have the action transferred to the Southern District of New York. See Stipulation and Order to Transfer Venue, dated Feb. 24, 2011 (annexed to Informative Motion Regarding Transfer of Venue Stipulation, filed Mar. 3, 2011 (Docket # 7)). Plaintiff sought leave to file an amended complaint on July 29, 2011, Motion for Leave to File Amended Complaint, filed July 29, 2011 (Docket # 24); Amended Complaint, dated July 29, 2011 (annexed to Motion for Leave to File Amended Complaint), and on August 29, 2011, this Court granted this request without opposition, Memorandum Endorsement, filed Aug. 29, 2011 (Docket # 25). On January 25, 2013, following discovery, defendants filed the instant motion.[1]

## II.   LAW GOVERNING SUMMARY JUDGMENT MOTIONS

Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a

---

[1] See Notice of Defendant's Motion for Summary Judgment, filed Jan. 25, 2013 (Docket # 41); Ramme Decl.; Memorandum of Law in Support of Defendant Amtrak's Motion for Summary Judgment, filed Jan. 25, 2013 (Docket # 43) ("Def. Mem."); Defendant's Local Rule 56.1 Statement of Undisputed Material Facts, filed Jan. 25, 2013 (Docket # 44); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and Their Responsive Statement of Facts, filed Mar. 4, 2013 (Docket # 46) ("Pl. Mem."); Plaintiffs' Local Rule 56.1 Responsive Statement of Uncontested Facts and Additional Facts (Docket # 47); Reply Memorandum of Law in Support of Defendant Amtrak's Motion for Summary Judgment, filed Apr. 5, 2013 (Docket # 48) ("Def. Reply").

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original) (additional citation omitted) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citations omitted). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (alteration in original) (quoting Celotex, 477 U.S. at 322). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247–48).

III.     DISCUSSION

Defendants seek summary judgment in their favor on three grounds: (1) Vega has failed to establish the cause of her accident and therefore her negligence claim fails as a matter of law, Def. Mem. at 7–11; Def. Reply at 2–8; (2) Villanua's loss of consortium claim fails because it is derivative of the negligence claim, Def. Mem. at 11–12; Def. Reply at 9–10, and (3) the suit cannot proceed against any unnamed defendants, Def. Mem. at 12; Def. Reply at 10.  We discuss each argument next.

A.   Vega's Negligence Claim

Vega's amended complaint asserts that the "negligent or wrongful acts or omissions" of defendants caused Vega's injuries.  Amended Complaint ¶ 1.  To state a claim for negligence under New York law, a plaintiff's allegations must establish "(1) that the defendant owed the plaintiff a cognizable duty of care, (2) that the defendant breached that duty, and (3) that the plaintiff suffered damages as a proximate result of that breach."  King v. Crossland Sav. Bank, 111 F.3d 251, 255 (2d Cir. 1997).[2]  In the context of premises liability, a plaintiff must demonstrate that "the landowner controls the property, that a defect exists, and that the defect causes plaintiff's injuries."  McHale v. Westcott, 893 F. Supp. 143, 147 (N.D.N.Y. 1995) (citing Turrisi v. Ponderosa Inc., 179 A.D.2d 956, 957–58 (3d Dep't 1992)).  "The failure to establish the cause of a plaintiff's injury is fatal to a claim of negligence."  Ascher v. Target Corp., 522 F. Supp. 2d 452, 456 (E.D.N.Y. 2007); accord Wang v. Alexander's Dep't Store, 247 A.D.2d 467, 467–68 (2d Dep't 1998) (granting summary judgment to defendants where plaintiff was unable to "connect the accident to any negligence on the part of the respondents" and "failed to submit

---

[2]  Both parties assert that New York law governs this action.  Def. Mem. at 6–7; Pl. Mem. at 5; Def. Reply at 1.  "[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry."  Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997).  Accordingly, we apply New York law to plaintiffs' claims.

6

any probative evidence in admissible form to support their claim that the [plaintiff's] injury was caused by a defect in an escalator").

A plaintiff "need only prove that it was more likely or more reasonable that the alleged injury was caused by the defendant's negligence than by some other agency." Ascher, 522 F. Supp. 2d at 456 (citing Williams v. KFC Nat'l Mgmt. Co., 391 F.3d 411, 421 (2d Cir. 2004), cert. denied, 544 U.S. 1012 (2005); Gayle v. City of N.Y., 92 N.Y.2d 936, 937 (1998)). "However, when an accident is just as likely to be attributed to a factor other than the one alleged by a plaintiff, any determination of the cause of the accident is bound to be predicated on sheer speculation," and thus cannot form the basis of a negligence claim. Id. (citing Wurtzel v. Starbucks Coffee Co., 257 F. Supp. 2d 520, 527 (E.D.N.Y. 2003)).

Here, no witness has been able to identify the cause of Vega's fall. Vega testified, "I truly cannot explain it myself. I imagine that I lost my balance." (Vega Dep. Tr. 69). During Villanua's deposition, the following colloquy occurred:

> Q: Based on your observation, do you know what caused [Vega] to fall?
> A: The exact reason, I don't know the exact reason.
>         . . .
> Q: So you don't know what caused her to actually fall?
> A: No. No.

(Villanua Dep. Tr. 39–40). Similarly, when asked if the escalator appeared to be working properly, Vega responded, "I cannot swear by it because I don't know if there was a problem, but my impression was that yes, that it was working." (Vega Dep. Tr. 70). When asked if the escalator "moved in an abnormal way to cause [Vega] to fall," Villanua responded, "That I know, no." (Villanua Dep. Tr. 40).

Plaintiffs have submitted no evidence that connects Vega's accident to any action on the part of defendants. The inability to attribute the accident to any particular cause — let alone a

defect in the escalator — is fatal to plaintiffs' claims. As one Appellate Division decision puts it, "[i]n a slip-and-fall case, a plaintiff's inability to identify the cause of the fall is fatal to the action because a finding that the defendant's negligence, if any, proximately caused the plaintiff's injuries would be based on speculation. . . . Where it is just as likely that some other factor, such as a misstep or a loss of balance, could have caused a slip and fall accident, any determination by the trier of fact as to causation would be based upon sheer conjecture." Dennis v. Lakhani, 102 A.D.3d 651, 652 (2d Dep't 2013) (citations and internal quotation marks omitted); accord McHale, 893 F. Supp. at 149–51 (granting summary judgment for defendants where plaintiffs stated in depositions that they did not know what caused fall).

Plaintiffs contend that they have identified the cause of Vega's accident as "lack of signage and faulty employee instructions and guidance." Pl. Mem. at 4. They assert that "no signs were placed near the escalator to warn travelers of the risk of boarding an escalator with luggage." Pl. Mem. at 6. They also argue that "[b]ut for the prompting of an employee, Mrs. Vega would not have used a narrow escalator to transport herself and her luggage in an awkward position (right hand behind her holding a large suit case and a left shoulder draped with a smaller bag while riding an escalator) to street level." Pl. Mem. at 5. However, these arguments are insufficient to allow a jury to find the defendants were negligent for two independent reasons. First, while "[a] property owner has a duty to maintain its property in a reasonably safe condition, which may also include the duty to warn of a dangerous condition," Rivero v. Spillane Enterprises, Corp., 95 A.D.3d 984, 984-5 (2d Dep't 2012) (citation and internal quotation marks omitted), there is no evidence in the record at all that an escalator without a warning sign constitutes a dangerous condition. The mere fact that an accident happened on the escalator is not evidence that the condition that caused the accident is itself dangerous. See, e.g.,

Rella v. State of N.Y., 117 A.D.2d 591, 592 (2d Dep't 1986) ("Negligence cannot be presumed from the mere occurrence of an injury."); Kaplan v. City of N.Y., 10 A.D.2d 319, 324 (1st Dep't 1960) ("The mere happening of an accident is not in and of itself proof of negligence."). There is simply no evidence in the record that it was dangerous for plaintiff to bring a piece of luggage with her onto the escalator. Accordingly, plaintiffs have not shown that the absence of a warning sign or the employee's encouraging plaintiff to use the escalator reflects a breach of defendants' duty. Second, and more fundamentally, even if evidence had been provided that it was dangerous to use the escalator with luggage, plaintiffs still could not overcome the absence of evidence that Vega's bringing of the luggage onto the escalator actually caused her to fall. As previously noted, this lacuna in the evidentiary record is fatal to Vega's negligence claim.

In sum, defendants are entitled to summary judgment on Vega's claim of negligence.

### B.  Villanua's Loss of Consortium Claim

Under New York law, "[a] loss of consortium claim is a derivative action that depends on the viability of the primary cause of action." Reed v. Medford Fire Dep't, 806 F. Supp. 2d 594, 606 (E.D.N.Y. 2011); accord Griffin v. Garratt-Callahan Co., 74 F.3d 36, 40 (2d Cir. 1996); Clarke v. City of N.Y., 82 A.D.3d 1143, 1144 (2d Dep't 2011). Where the primary cause of action is dismissed on summary judgment, the loss of consortium claim must be dismissed as well. Cerqua v. Stryker Corp., 2013 WL 1752284, at *4, *7 (S.D.N.Y. Apr. 23, 2013); Kaisman v. Hernandez, 61 A.D.3d 565, 566 (1st Dep't 2009) ("The failure of [plaintiff's] substantive claims is fatal to his wife's derivative claim for loss of consortium."). Because we find that defendants are entitled to summary judgment on Vega's negligence claim, Villanua's loss of consortium claim fails as well.

### C.  Claims Against Unidentified Parties

Defendants seek the dismissal of plaintiffs' claims against "Insurance Companies A, B and C" on the grounds that discovery has ended and plaintiffs have not identified these entities or demonstrated their involvement in Vega's accident. Def. Mem. at 12. Plaintiffs did not respond to this argument in their moving papers. While the naming of fictitious defendants is permissible when a plaintiff has not yet discovered the identity of a party, Kemper Ins. Cos. v. Fed. Express Corp., 115 F. Supp. 2d 116, 125 (D. Mass. 2000) (citing Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)), aff'd, 252 F.3d 509 (1st Cir.), cert. denied, 534 U.S. 1020 (2001), "[f]ictitious parties must eventually be dismissed, if discovery yields no identities," id. (citing Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990)). Because discovery has closed in this case and plaintiffs have failed to identify these entities, each of these unnamed parties is dismissed.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Docket # 41) is granted. The Clerk is requested to enter judgment dismissing the complaint and to close this case.

Dated: July 29, 2013
New York, New York

*[signature]*
GABRIEL W. GORENSTEIN
United States Magistrate Judge